**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

AKO K. BURRELL,

                                        Plaintiff,

                v.

KATHY HOCHUL, et al.,                              No. 6:25-CV-52
                                                   (GTS/PJE)

                                        Defendants.

---

**APPEARANCES:**

Ako K. Burrell
17-B-2994
Eastern New York Correctional Facility
Box 338
Napanoch, New York 12458
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

### I. **In Forma Pauperis**

Plaintiff pro se Ako K. Burrell ("plaintiff") commenced this action on January 13, 2025, by filing an amended complaint. *See* Dkt. No. 4. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

he financially qualifies to proceed IFP.[2]  This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915, 1915A.

## II.  Initial Review

### A.  Legal Standards

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Generally, where the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  The Second Circuit affords pro se litigants a "special solicitude" such "that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted).  However, here, plaintiff's "special status as a pro se civil rights litigant" has previously been revoked and "the Court will hold plaintiff to a standard more demanding than is expected of an ordinary pro se litigant."  *Burrell v.*

---

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

*Trinity Food Service Group*, et al., No. 9:24-CV-1377 (BKS/TWD), Dkt. No. 4 at 4-5 (N.D.N.Y. Dec. 23, 2024) (citing *Edwards v. Selsky*, No. 9:04-CV-1054 (NAM/GHL), 2017 WL 748442, at *3 (N.D.N.Y. Mar. 6, 2007)).

The Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"[P]ro se pleadings still must comply with . . . the Federal Rules of Civil Procedure."[3] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).[4] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is

---

[3] Hereinafter, "Fed. R. Civ. P."
[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction . . .  and . . . a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Id.* (citations omitted).

"If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint." *Rich v. Akwesasne Mohawk Casino Resort*, No. 8:24-CV-255 (AMN/CFH), 2024 WL 3677262, at *2 (N.D.N.Y. Aug. 6, 2024), *report and recommendation adopted,* No. 8:24-CV-255 (AMN/PJE), 2025 WL 286937 (N.D.N.Y. Jan. 24, 2025) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995)).  "However, an opportunity to amend is not required where 'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.'"  *Id*. (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

III.  **Discussion**

A.  **Plaintiff's Amended Complaint**

Plaintiff's amended complaint lists the following individuals as defendants: Kathy Hochul ("Hochul"), New York State Governor; Letitia James ("James"), New York State Attorney General; Pezdek, Senior Parole Officer; Pelligrino, Senior Parole Officer; D. Traglia ("Traglia"), Parole Officer; Bektic, Parole Officer; LaPorte; Force, Correction Officer; Schalager; Van Winkler, Parole Officer; and Cuppino.  *See* Dkt. No. 4 at 2-3, 10. Plaintiff specifies that he seeks to proceed against Hochul, James, Pezdek, Pelligrino, Traglia, Bektic, LaPorte, Force, Van Winkler, Schalager, and Cuppino in both their official and individual capacities. *See id*. at 1-3.

Plaintiff was released from New York State Department of Corrections and Community Supervision custody prior to the events giving rise to his amended complaint. *See* Dkt. No. 4 at 3.  On June 20, 2024, plaintiff sought to file documents with New York State relating to two businesses.  *See id*.  When attempting to enter the government building at 207 Genesee Street, Utica, New York, plaintiff was informed that Hochul and

James "banned [him] from all [New York State] buildings" and placed him "on a watch list." *Id*. Plaintiff alleges that Van Winkler, Pezdek, and LaPorte told him that that due to this ban, he was permitted to report to the parole office at 207 Genesee Street, but forbidden from entering any other department within the building. *See id*. Van Winkler, Pezdek, and LaPorte further explained to plaintiff that this ban was the result of plaintiff's lawsuit filed in case number 9:22-CV-0102, the threats plaintiff made in March 2024 against Assistant Attorney General Nicholas Dorado while incarcerated at the Attica Correctional Facility, and that plaintiff was costing New York State "millions" of dollars. *Id*. at 4.

Plaintiff asserts that Van Winkler sexually assaulted him on September 4, 2024. *See* Dkt. No. 4 at 4. On October 7, 2024, plaintiff sought to file a Prison Rape Elimination Act ("PREA") complaint documenting the September 4, 2024, sexual assault, but LaPorte refused to accept the complaint. *See id*. Plaintiff also claims that LaPorte refused to "issue a stipulation" assigning him a new parole officer or investigate his claim about Van Winkler. *Id*. Plaintiff states that he "was in fear of retaliation" of Van Winkler violating his parole for his attempt to file the PREA complaint and seeking a restraining order against her. *See id*.

On October 8, 2024, Van Winkler informed plaintiff that he was to remain on GPS monitoring "due to threats he made against C.O.[]s, parole officers, schools, [and] their kids [and] families" and his refusal to dismiss the lawsuits filed under case numbers 9:23-CV-0821 and 9:23-CV-0918. Dkt. No. 4 at 5.

On October 29, 2024, plaintiff met with Van Winkler, Pezdek, LaPorte, Traglia, LaForce, and Bektic at the parole office. *See* Dkt. No. 4 at 5. The "hostility and tension

[were] high" when he entered the office. *See id*. Plaintiff asked why there was "such a heavy presence" during the meeting. *Id*. He was informed that it was because he filed the lawsuit in 6:24-CV-1129, and an investigation was made into Van Winkler following plaintiff's PREA complaint. *Id*. Plaintiff told defendants that "he will not be intimidated" and requested (1) to have all of his emails forwarded to "Amanda at the Oneida Couty Re-Entry Task Force," and (2) for a referral to be evaluated by "mental health services for his serious mental illness he suffers from." *Id*. Van Winkler responded that "he wasn't getting shit, [] to get out of the office now!!, [and] to come back tomorrow or go to jail." *Id*. at 6. Van Winkler also told plaintiff that he "ma[d]e her sick." *Id*. Plaintiff told defendants to "google . . . . 6:24-CV-1129" and requested to submit a grievance with Force. *Id*.

Plaintiff claims he was assaulted as he attempted to leave Van Winkler's office. *See* Dkt. No. 4 at 6. Plaintiff alleges that Traglia placed him in a "strangulation hold" while Van Winkler, Force, Bektic, and John Doe "hoisted" him in the air and "slammed" him down onto a table in the lobby of the parole office. *Id*. Plaintiff then "fell to the floor" where he "witnessed Pezdek, Traglia, Bektic, Force, John Doe, and Van Winkler" assault him by punching and kicking his face, head, torso, and legs. *Id*. During the assault, plaintiff heard defendants[5] yell, "google this ass whooping"; "you wanna (sic) file lawsuits on us, how bout (sic) we break your fingers?"; and "now PREA this rat." *Id*. Plaintiff also alleges that Pelligrino cut his left ankle while removing a GPS monitor and called him a "a bitch, who was scared when getting his ass beat in the lobby." *Id*. at 8.

After the assault, plaintiff was detained, charged with Third-Degree Menacing and Second-Degree Harassment, and his parole was violated. *See* Dkt. No. 4 at 6. Attached

---

[5] Plaintiff does not specify which defendant or defendants made these statements nor clarify if he is unaware who spoke.

to plaintiff's amended complaint are two criminal complaints charging the above-referenced offenses and summarizing the incident. *See id.* at 13, 15. Plaintiff claims that Van Winkler lied when she stated that plaintiff "yelled at her in an aggressive manner with a closed fist" and "put her in bodily fear." *See id*. at 6. He also claims that Force lied when he said that plaintiff "flipped a small table over [and] caused him injury." *Id*. Plaintiff states that, as a result of his parole violation, he lost his job. *See id*. Plaintiff asserts that the allegations set forth in the criminal complaints and the charges brought against him were based on Force and Van Winkler's lies and were made in retaliation for "requesting parole grievances" and filing the lawsuit in case 6:24-CV-1129. *Id*. at 8, 10; *see id*. at 13, 15.

Plaintiff's amended complaint also alleges that LaPorte, Cuppino, Schalager, and Pezdek intentionally assigned Van Winkler to him as his parole officer and subsequently refused to investigate the sexual assault complaint he filed against Van Winkler. *See* Dkt. No. 4 at 10. Plaintiff asserts that Van Winkler's assignment as his parole officer created a conflict of interest and allowed Van Winkler to (1) violate his parole in retaliation for his filing the PREA complaint, and (2) place another GPS monitor on his person. *See id*.

B. **Analysis**

Plaintiff seeks to proceed pursuant to 42 U.S.C. § 1983 against Hochul, James, Pezdek, Pelligrino, Traglia, Bektic, LaPorte, Force, Schalager, Van Winkler, and Cuppino, alleging that his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated. *See generally* Dkt. No. 4. Plaintiff's amended complaint also suggests that Pezdek, Pelligrino, Traglia, Bektic, LaPorte, Force, Schalager, Cuppino, and Van Winkler conspired against him to have his parole revoked. *See id*. at 10.

Plaintiff's amended complaint states that all claims against Hochul, James, Pezdek, Pelligrino, Traglia, Bektic, LaPorte, Force, Schalager and Cuppino are asserted in both their official and individual capacities. *See* Dkt. No. 4 at 1-3. Plaintiff's allegations concern Van Winkler's conduct in her official capacity as his parole officer. *See* Dkt. No. 4 at 10. Plaintiff does not specify Schalager or Cuppino's job titles, but he alleges that Schalager and Cuppino were responsible for assigning Van Winkler as his parole officer. *See id*. As such, it appears that Schalager and Cuppino are employees of the State of New York.

1. **Sovereign Immunity**

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Applying this principle, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307, at *6 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted,* No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024) (quoting *Kisembo v. N.Y.S. Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018)); *see Garcia v. Paylock*, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.").

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gerken*, 2024 WL 4608307, at *7 (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).   "Sovereign immunity bars not only suits against states themselves, but also suits for damages against state officials acting in their official capacities."  *Chapman v. City of Albany*, No. 1:23-CV-686 (LEK/PJE), 2025 WL 295011, at *5 (N.D.N.Y. Jan. 24, 2025) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *see also Gollomp*, 568 F.3d at 365-66.

"New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaint."  *Gerken*, 2024 WL 4608307, at *7 (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.") (internal quotations omitted) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)); *see also Mamot v. Bd. of Regents*, 367 *F. App'x* 191, 192 (2d Cir. 2010) (summary order) ("It is well-established that New York has not consented to § 1983 lawsuits in federal court[.]").

Hochul is the New York State Governor.[6]  James is the New York State Attorney General.[7]  Based on plaintiff's allegations, Pezdek, Pelligrino, Traglia, Bektic, LaPorte, Force, Schalager, Van Winkler, and Cuppino all work for the New York State Parole

---

[6] NEW YORK STATE GOVERNOR, "Kathy Hochul", https://www.governor.ny.gov/ (last visited Jan. 23, 2026).
[7] NEW YORK STATE ATTORNEY GENERAL, "Letitia James", https://ag.ny.gov/about/meet-letitia-james (last visited Jan. 23, 2026).

Division, Utica Office.[8]  *See* Dkt. No. 4 at 2-3, 10.  Therefore, plaintiff's claims for monetary damages against all defendants in their "official capacit[ies] are barred by the Eleventh Amendment."  *Young v. Lugo*, No. 18-CV-4216(JFB)(AKT), 2019 WL 1492679, at *3 (E.D.N.Y. Apr. 4, 2019) (citing *Darcy v. Lippman*, 356 F. App'x 434, 436-37 (2d Cir. 2009) (summary order) ("The Eleventh Amendment likewise bars [the plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities"). Accordingly, the undersigned recommends that all claims against all defendants in their official capacities be dismissed with prejudice and without leave to amend.

### 2.  **Fifth and Sixth Amendment Claims**

Plaintiff's amended complaint alleges that his Fifth Amendment due process and Sixth Amendment rights were violated.  *See* Dkt. No. 4 at 8-10.  For the reasons that follow, the undersigned recommends that plaintiff's Fifth and Sixth Amendment claims against all defendants in their individual capacities be dismissed with prejudice and without leave to amend.

"It is well settled that the Fifth Amendment Due Process Clause applies only to the federal government, and not to state or municipal governments."  *Burrell v. Van Winkler*, No. 6:24-CV-1169 (DNH/MJK), 2024 WL 4957174, at *4 (N.D.N.Y. Oct. 30, 2024), *report and recommendation adopted,* No. 6:24-CV-1169, 2024 WL 4834215 (N.D.N.Y. Nov. 20, 2024) (citing *Dusenbery v. United States*, 534 U.S. 161, 167, (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property

---

[8] New York State Parole Offices Mailing Addresses, "Utica Area Office, 207 Genesee Street, 5th Floor Utica NY 13501", https://www.health.ny.gov/health_care/medicaid/publications/docs/adm/08adm-3app6.pdf (last visited Jan. 23, 2026).

without due process of law."")); *see also Poe v. Ullman*, 367 U.S. 497, 540 (1961) (explaining that the Fourteenth Amendment due process requirements apply to state governments and the same requirements in Fifth Amendment apply to "the Federal Government"); *Robinson v. Wright,* No. 5:21-CV-1098 (TJM/ML), 2022 WL 2663369, at *3 (N.D.N.Y. Jul. 11, 2022) (dismissing the plaintiff's Fifth Amendment claims where no allegations were made against any federal official); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) (citing *Dusenbery*, 534 U.S. at 167) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials.  Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." (internal citations omitted)).

The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. CONST. amend. VI.

Here, plaintiff's amended complaint "does not allege that any federal official violated plaintiff's Fifth Amendment due process rights. Rather, all of plaintiff's allegations are against state officials.  Accordingly, plaintiff's due process claims, if any, may only be brought under the Fourteenth Amendment, not the Fifth Amendment."  *Burrell*, 2024 WL 4957174, at *5 (citing *Dusenbery*, 534 U.S. at 167).   Similarly, plaintiff's amended complaint does not raise a Sixth Amendment claim because the rights afforded under the

Sixth Amendment apply only to defendants facing criminal prosecution.  Here, plaintiff is pursuing a civil matter.  *See* Dkt. No. 4; *Lopez v. City of New York*, No. 05-CV-3624 (ARR/KAM), 2007 WL 2228150, at *11 (E.D.N.Y. July 31, 2007) (citing *United States v. Coven,* 662 F.2d 162, 176 (2d Cir.1981)) ("[T]he Sixth Amendment only applies to criminal proceedings."); *James v. United States*, 330 F. App'x 311, 313 (2d Cir. 2009) (summary order) (citing *Coven*, 662 F.2d at 176) (noting that "[the] Sixth Amendment right to counsel does not apply to civil cases.").  Accordingly, the undersigned recommends that plaintiff's Fifth and Sixth Amendment claims against all defendants in their individual capacities be dismissed with prejudice and without leave to amend.

### 3.  Personal Involvement

"[I]n order to recover damages in a civil rights action, [the] plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations, and supervisory officials may not be held liable merely because they held a position of authority."  *Golston v. Cortese*, No. 1:21-CV-914 (GTS/CFH), 2022 WL 2657290, at *6, n.7 (N.D.N.Y. Apr. 1, 2022), *report and recommendation adopted,* No. 1:21-CV-914 (GTS/CFH), 2022 WL 2071773 (N.D.N.Y. June 9, 2022) (quoting *Montes v. O'Shea*, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *5 (N.D.N.Y. Apr. 6, 2021), *report and recommendation adopted,* No. 1:21-CV-303, 2021 WL 1758858 (N.D.N.Y. May 4, 2021) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676)); *see also Davis v. Cnty. of*

*Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (quoting *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996)) (A "complaint must still allege particular *facts* indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice."). "A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." *Davis*, 355 F. Supp. 2d at 677. (citations omitted). "[V]ague, conclusory allegations do not satisfy the personal involvement standard." *Collins v. City Univ. of New York*, No. 21 CIV. 9544 (NRB), 2023 WL 1818547, at *6 (S.D.N.Y. Feb. 8, 2023) (citing *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *6 (S.D.N.Y. 2018)).

As discussed above, plaintiff alleges that Hochul and James banned him from all New York State government buildings and placing him on a watch list. *See* Dkt. No. 4 at 3. Reading plaintiff's complaint liberally,[9] he appears to claim that Hochul and James

---

[9] To the extent that plaintiff's complaint could potentially be read as stating a claim that the purported ban from all New York State government buildings violates his First Amendment right of access, plaintiff has failed to establish that he has a constitutional right to enter public government buildings, or more specifically, a right to enter the building located at 207 Genesee Street, Utica, New York. The Second Circuit has articulated that individuals have a First Amendment right of access to enter courthouses to seek judicial redress, witness court proceedings, and file or obtain court papers. *See Huminski v. Corsones*, 396 F.3d 53, 83 (2d Cir. 2005); *Salmon v. Blesser*, 802 F.3d 249, 255 (2d Cir. 2015); *Cosby v. City of White Plains, New York, ex rel. City of White Plains*, No. 04 CIV. 5829 (CLB/GAY), 2007 WL 853203, at *7 (S.D.N.Y. Feb. 9, 2007) (quoting *Whalen v. County of Fulton,* 126 F.3d 400, 406 (2d Cir.1997) ("The constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress."). Plaintiff has not alleged that the 207 Genesee Street address is a courthouse or that he was seeking access to a court proceeding or court papers. *See generally* Dkt. No. 1. Further, plaintiff has not demonstrated that these rights extend to being physically present in any area of a courthouse or any public government building generally. *See Salmon*, 802 F.3d at 255 (holding that the plaintiff failed to state a First Amendment right of access claim because "Salmon points to no authority, nor are we aware of any, indicating that being required to wait for one's attorney outside the courthouse, when one wished to wait for him inside, interferes with the ability to access judicial records."). Moreover, plaintiff states he attempted to enter 207 Genesee Street to file documents related to two businesses. *See* Dkt. No. 1 at 3. Yet, plaintiff has not demonstrated

violated his Fourteenth Amendment equal protection rights by targeting him individually or selectively enforcing[10] a ban on him.[11]  However, plaintiff has not demonstrated that Hochul or James were personally involved in implementing the ban preventing plaintiff from entering all New York State government buildings.  *See Golston*, 2022 WL 2657290, at *6.  More specifically, plaintiff does not state what actions Hochul or James personally took to implement the ban, the terms or conditions of the ban, when the ban was implemented, for how long the ban was to remain in effect, or any potential penalties for violating the ban.  *See generally* Dkt. No. 4.  Outside of plaintiff's allegation, there is nothing demonstrating that he is actually banned from all New York State government buildings or that Hochul or James had anything to do with such a ban.  Accordingly, Hochul's position as Governor and James' position as Attorney General, without more,

---

that he has no other means of filing the documents or otherwise accessing the proper state agency or entity, such that his inability to enter 207 Genesee Street completely foreclosed his ability to do so.

[10] "[S]elective prosecution claims, also called selective enforcement or selective treatment claims, are brought by plaintiffs against whom state actors selectively enforced the law in an allegedly discriminatory manner."  *White v. City of New York*, 206 F. Supp. 3d 920, 930 (S.D.N.Y. 2016) (citing *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir.1980)); *Wood v. Town of E. Hampton*, No. CIV.A. 08-CV-4197 (DRH), 2010 WL 3924847, at *18 (E.D.N.Y. Sept. 30, 2010) (noting that selective prosecution and selective enforcement apply the same standard).

> To succeed in an action alleging selective prosecution, plaintiffs in this Circuit have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001)); *Aretakis v. Durivage*, No. 07-CV-1273 (RFT), 2009 WL 249781, at *22 (N.D.N.Y. Feb. 3, 2009) (citing *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir. 2005)) (same).

[11] "As to the first element of her selective enforcement claim, '[a]n order that singles out an individual and restricts his ability to enter the municipal building during office hours is the quintessential example of selective treatment.'"  *See Mangano v. Cambariere*, No. 04 CIV. 4980 (SCR/GAY), 2007 WL 2846418, at *6 (S.D.N.Y. Sept. 27, 2007) (quoting *Tiffany v. Village of Briarcliff Manor,* No. 95 Civ. 8335 (LAP), 1997 WL 177895, at *10 (S.D.N.Y. Apr. 14, 1997); *Manosh v. Guards State Off. Bldg.*, No. 6:18-CV-717 (TJM/ATB), 2018 WL 3062584, at *4 (N.D.N.Y. June 21, 2018), *report and recommendation adopted,* No. 6:18-CV-717 (TJM/ATB), 2018 WL 4635705 (N.D.N.Y. July 31, 2018) (citing 1997 WL 177895, at *10) ("Selective treatment is part of an equal protection claim").

fail to demonstrate their personal involvement.  *See Collins*, 2023 WL 1818547, at *6 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing *Wright*, 21 F.3d at 501) ("noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority");  *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *5 (S.D.N.Y. Dec. 19, 2017) (dismissing a Section 1983 claim for lack of personal involvement where the "[p]laintiff has not alleged any way in which [the] [d]efendants were personally responsible for, or involved in the circumstances that resulted in" the plaintiffs' alleged harms.).

Similarly, Hochul's position as Governor and James' position as Attorney General, without more, does not render them liable for any action or inactions of staff working under their direction and supervision.   "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Richardson*, 347 F.3d at 435 (quoting *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir. 1989)). Rather,

> supervisor liability under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id*. (quoting *Hernandez,* 341 F.3d at 145).

Here, plaintiff (1) has not demonstrated that Hochul or James directly participated in any alleged constitutional violations; (2) has not alleged that Hochul or James failed "to

remedy a wrong after being informed through a report or appeal"; (3) is not challenging a policy or custom; (4) has not alleged grossly negligent supervision; and (5) has not alleged that Hochul or James failed "to act on information indicating that unconstitutional acts were occurring." *Richardson*, 347 F.3d at 435; *see also generally* Dkt. No. 1.  However, because it is potentially possible that plaintiff can demonstrate Hochul or James' personal involvement in the alleged constitutional violation, the undersigned recommends that all of plaintiff's claims against Hochul and James in their individual capacities be dismissed without prejudice and with leave to amend.  *See Collins*, 2023 WL 1818547, at *6; *Richardson*, 347 F.3d at 435; FED. R. CIV. P. 8(a)(2).

### 4. **Fourteenth Amendment**

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law . . . ."  U.S. CONST. amend. XIV, § 1.  "Those seeking to invoke its protection must establish that one of these interests is at stake." *Cullen v. Mello*, No. 23-413, 2024 WL 1904571, at *1 (2d Cir. May 1, 2024) (internal quotation marks and additional citations omitted). The Due Process Clause contains both procedural and substantive components.  To successfully state a procedural due process claim, a plaintiff must allege that they both "possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Nicholas v. Seggos*, No. 8:23-CV-463 (GTS/CFH), 2023 WL 6121164, at *5 (N.D.N.Y. Sept. 19, 2023), *report and recommendation adopted,* No. 8:23-CV-0463 (GTS/CFH), 2023 WL 7004103 (N.D.N.Y. Oct. 24, 2023) (quoting *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citation omitted)).

"In addition to its governance over fair process, the Fourteenth Amendment 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Burrell*, 2024 WL 4957174, at *5 (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998))).  "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* (quoting *Hurd*, 984 F.3d at 1087) (quoting *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012))).

Here, plaintiff alleges that his due process rights were violated because LaPorte, Cuppino, Schalager and Pezdek refused to (1) investigate his claim that Van Winkler sexually assaulted him on September 4, 2024; (2) allow him to file a PREA complaint against Van Winkler for the September 4, 2024, sexual assault;[12] and (3) assign him a new parole officer.  *See* Dkt. No. 4 at 4.  Plaintiff also alleges that Van Winkler arbitrarily continued to keep him on GPS monitoring in response to threats he made against "[correction officers], parole officers, schools, [and] the[ir] kids and families" and his refusal to dismiss the lawsuits filed under case numbers 9:23-CV-0821 and 9:23-CV-0918. *Id*. at 5.

Although the "PREA prohibits [parole officers] from having intimate relationships with parolees," *Kallinikos v. New York State Dep't of Corr. & Cmty. Supervision*, 481 F. Supp. 3d 76, 84 (E.D.N.Y. 2020), the "PREA does not provide individuals with a private right of action to assert claims in federal court." *Gibson v. Doe*, No. 23-CV-9474 (LTS),

---

[12] As will be discussed below, plaintiff also asserts that he was assaulted by Pezdek, Traglia, Bektic, Force, John Doe, and Van Winkler, in part, because he filed a PREA complaint against Van Winkler.  *See* Dkt. No. 4 at 5.  The amended complaint is unclear whether plaintiff actually filed a PREA complaint against Van Winkler.

2025 WL 1401535, at *5 (S.D.N.Y. May 7, 2025) (citing *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *10 (S.D.N.Y. Sept. 26, 2019)); *Abreu v. Brown*, No. 14-CV-6599, 2018 WL 565280, at *9 (W.D.N.Y. Jan. 22, 2018) (dismissing the plaintiff's claim alleging "a failure to investigate his allegations of sexual assault under [PREA] . . . because nothing in the statute suggests that PREA intended to establish a private claim for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a claim by an inmate.").   Accordingly, the undersigned recommends that plaintiff's Fourteenth Amendment due process claims against LaPorte, Cuppino, Schalager and Pezdek in their individual capacities for refusing to (1) investigate his claim that Van Winkler sexually assaulted him on September 4, 2024; and (2) allow him to file a PREA complaint against Van Winkler for the September 4, 2024, sexual assault be dismissed with prejudice and without leave to amend for failure to state a claim upon which relief can be granted.  *See Id*. (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

Conversely, at this early stage, plaintiff plausibly alleges that defendants LaPorte, Cuppino, Schalager and Pezdek, in their individual capacities, violated plaintiff's Fourteenth Amendment rights when they arbitrarily refused to assign him a new parole officer.  Plaintiff also plausibly alleges that Van Winkler, in her individual capacity arbitrarily kept him on GPS monitoring.  "Whether the justification for placing plaintiff on GPS monitoring [or refusing to assign him a new parole officer was] because of threats he made while incarcerated . . . or because of claims he filed against various correctional officials was arbitrary cannot, and will not, be decided by the court at this early juncture."[13]

---

[13] The undersigned notes that plaintiff's Fourteenth Amendment due process claim appears to be a continuation of the due process claim raised in 6:24-CV-1169 that the Court permitted survive Section 1915 review.

*Burrell*, 2024 WL 4957174, at *5.    Accordingly, the undersigned recommends that plaintiff's Fourteenth Amendment due process claims on these grounds against LaPorte, Cuppino, Schalager, Pezdek, and Van Winkler in their individual capacity survive Section 1915 review.[14]

### 5.  **Fourth Amendment: Excessive Force**

"The consensus among the district courts in this Circuit strongly favors the application of Fourth Amendment principles to a parolee's excessive force claim." *Burrell*, 2024 WL 4957174, at *6 (citing *Horace v. Gibbs*, No. 14-CV-655S, 2017 WL 4344435, at *4 (W.D.N.Y. Sept. 29, 2017), *aff'd,* 802 F. App'x 11 (2d Cir. 2020) (summary order) ("Although Horace identifies the Eighth Amendment as the source of his excessive force claim, it in fact arises under the Fourth Amendment, because the excessive force is alleged to have occurred during a parolee's arrest for a parole violation."); *Cox v. Fischer*, 248 F. Supp. 3d 471, 479 (S.D.N.Y. 2017) ("As several courts have recognized, a parolee's claim that he was subjected to excessive force in the course of an arrest for a parole violation arises under the Fourth Amendment, not the Eighth Amendment.").

> Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: (1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted.

*Burrell*, 2024 WL 4957174, at *7 (quoting *Graham v. Connor*, 490 U.S. 386, 390, 397 (1989)) (internal quotation marks omitted).  "The extent of intrusion on the suspect's rights must be balanced against the importance of governmental interests."  *Id*. (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)) (internal quotation marks omitted).  "The

---

[14] The undersigned makes no conclusion as to whether such claim could survive a properly-filed and supported dispositive motion.

standard for excessive force under the Fourth Amendment is not a demanding one." *Id*. (first citing *Castro v. Cnty. of Nassau,* 739 F. Supp. 2d 153, 176 (E.D.N.Y. 2010) (finding excessive force when handcuffs applied to the plaintiff "left imprints on his wrists and caused his wrists to become 'red and sore,'"); then citing *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *15 (S.D.N.Y. Mar. 31, 2009) (holding that "bruising and other nonpermanent injuries are sufficient" to demonstrate excessive force). "It is the *force used*, not the injuries caused, which must be determined to be *de minimis* as a matter of law." *Id*. (quoting *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)).

Here, plaintiff asserts that on October 29, 2024, Traglia, Pezdek, Bektic, Force, and Van Winkler assaulted him as he attempted to leave the parole office. *See* Dkt. No. 4 at 6. More specifically, he claims that Traglia choked him while Van Winkler, Force, Bektic, and John Doe picked him up and slammed him onto a table and then the ground, before all five individuals punched and kicked his face, head, body, and legs. *See id*. Plaintiff also asserts that Pelligrino cut his left ankle while removing a GPS monitor. *See id*. at 8.

As noted, attached to plaintiff's amended complaint are two criminal complaints documenting Van Winker and Force's version of the events leading up to the alleged assault and a description of plaintiff's conduct therein. *See* Dkt. No. 4 at 13, 15. Based on these facts alleged in plaintiff's amended complaint and the two criminal complaints, it is apparent that force was used to subdue plaintiff in the parole office. *See id*. at 6, 13, 15. Accordingly, the undersigned recommends that plaintiff's Fourth Amendment excessive force claims against Traglia, Pezdek, Bektic, Force, Van Winkler, and Pelligrino

survive Section 1915 review.[15]    However, to the extent that any Fourth Amendment excessive force claims are raised against LaPorte and Schalager, the undersigned recommends that such claims "be dismissed, without prejudice and with leave to amend, as the complaint is devoid of any allegations against them giving rise to a Fourth Amendment claim." *Burrell*, 2024 WL 4957174, at *8.

### 6. **First Amendment: Retaliation**

Plaintiff alleges that Van Winkler, Pedzek, Pelligrino, Traglia, Force, Bektic, and LaPorte assaulted him, violated his parole, and filed false criminal charges against him in retaliation for his attempting to file or filing a PREA claim against Van Winkler, seeking to file a grievance against Schalager and having Van Winkler removed as his parole officer, and exercising his First Amendment right to petition the government for redress of grievances, i.e. the commencement of cases 9:23-CV-0821, 9:23-CV-0918, and 6:24-CV-1129.    *See* Dkt. No. 4 at 4-6, 8-10; *Oliver v. Penny*, No. 1:19-CV-233 (BKS/DJS), 2020 WL 7316125, at *10 (N.D.N.Y. Dec. 11, 2020), *aff'd,* No. 21-111, 2022 WL 2165814 (2d Cir. June 16, 2022) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997)) ("It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments.").

### a. **Legal Standard**

"First Amendment retaliation claims typically arise in three distinct contexts: prisoners, public employees, and criticism of public officials by private citizens." *Decker*

---

[15] *See supra* n.10.

*Advert. Inc. v. Delaware Cnty., New York*, 765 F. Supp. 3d 128, 141 (N.D.N.Y. 2025) (quoting *Doe v. City of New York*, 18-CV-670 (ARR/JO), 2018 WL 3824133, at *11 (E.D.N.Y. Aug. 9, 2018). "The Second Circuit has 'described the elements of a First Amendment retaliation claim in several ways, depending on the factual context.'" *Id*. (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)).

To state a First Amendment retaliation claim, "a prisoner must demonstrate (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004))) (internal quotation marks omitted). This standard has been extended to parolees. *See Muhammad v. Jenkins*, No. 12 CIV. 8525 CM, 2013 WL 5225573, at *10 (S.D.N.Y. Sept. 13, 2013) ("The same goes for parolees, who are effectively still prisoners vis-à-vis their constitutional rights.").

"To constitute adverse action, conduct must be of the type that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Walker*, 130 F.4th at 298 (quoting *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003))) (internal quotation marks omitted). "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id*. (quoting *Gill*, 389 F.3d at 381). "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a

substantial part in the adverse action.'"  *Id*. (quoting *Davis*, 320 F.3d at 354) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001))).

"[A] key inquiry with respect to any claim of First Amendment retaliation is whether the allegedly retaliatory act was taken because of an 'impermissible reason.'" *Houghtaling v. Downes*, 623 F. Supp. 3d 145, 160 (W.D.N.Y. 2022) (quoting *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 556 (2d Cir. 2001)).  "[I]n other words, that the protected conduct was a 'substantial or motivating factor' in the defendant's decision to take action against the plaintiff."  *Gosier v. Paolozzi*, No. 9:23-CV-1135 (GTS/MJK), 2024 WL 340776, at *6 (N.D.N.Y. Jan. 30, 2024) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### b.  **Analysis**

Here, plaintiff's actions of seeking to file a PREA claim and grievances, as well as filing the lawsuits in case numbers 9:23-CV-0821, 9:23-CV-0918, and 6:24-CV-1129 constitute protected conduct.  *See Oliver*, 2020 WL 7316125, at *10 (quoting *Monsky*, 127 F.3d at 246); *Walker*, 130 F.4th at 298 (quoting *Gill*, 389 F.3d at 381).  Plaintiff alleges that, as a result of filing the claims, grievance, and lawsuits referenced above, Traglia, Pezdek, Bektic, Force, and Van Winkler assaulted him in the parole office, revoked his parole, and filed false criminal charges against him.[16]  *See* Dkt. No. 4 at 6, 8, 10, 13, 15. Plaintiff also alleges that after the assault, Pelligrino cut his left ankle while removing a GSP monitor.  *See id*. at 8.[17]

---

[16] Plaintiff's allegation that false criminal charges were filed against him will be discussed in greater detail below as this allegation may be precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See infra* at 28-30.
[17]  It is not fully clear whether plaintiff is intending to argue that the cutting of his ankle was accidental or intentional.

The undersigned concludes that being physically assaulted constitutes adverse action and is the type of conduct that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Walker*, 130 F.4th at 298; *see also Walker*, 130 F.4th at 301 (citing *Espinal*, 558 F.3d at 129) ("A physical attack by prison officers may qualify as an adverse action."). Plaintiff further alleges that while he was being assaulted, Traglia, Pezdek, Bektic, Force, and Van Winkler stated, "you wanna (sic) file lawsuits on us, how bout (sic) we break your fingers?" and "now PREA this rat." Dkt. No. 4 at 6. Similarly, plaintiff asserts that Pelligrino called him a "a bitch, who was scared when getting his ass beat in the lobby" while removing the GPS monitor from his left ankle. *Id*. at 8. Plaintiff's allegation of Traglia, Pezdek, Bektic, Force, Van Winkler, and Pelligrino taunting him during the assault establishes a causal connection and that plaintiff's filing of grievances, complaints, and lawsuits were a "motivating factor" in defendants alleged assault. *Gosier*, 2024 WL 340776, at *6 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287); *see Walker*, 130 F.4th at 298. Accordingly, the undersigned recommends that plaintiff's First Amendment retaliation claim against Van Winkler, Pedzek, Traglia, Force, Bektic, and Pelligrino[18] survive Section 1915 review.[19] However, to the extent that any First Amendment retaliation claim is raised against LaPorte based

---

[18] The undersigned notes that plaintiff's amended complaint references John Doe as an individual who assaulted him but does not name John Doe as a defendant. *See* Dkt. No. 4. As the undersigned recommends that (1) plaintiff's First Amendment retaliation claim based on the same assault against Van Winkler, Pedzek, Pelligrino, Traglia, Force, Bektic, and LaPorte survives Section 1915 review, and (2) plaintiff be afforded an opportunity to amend several of his other claims, "[p]laintiff is advised that the U.S. Marshals cannot effect service on a "John or Jane Doe" defendant. In the event that plaintiff wishes to amend to pursue a claim against a Doe defendant, he will need to take reasonable steps to ascertain the defendant's identity." *Dorsey v. City of Albany Police Dep't*, No. 1:15-CV-859 (BKS/CFH), 2015 WL 5724891, at *3 (N.D.N.Y. Sept. 29, 2015)
[19] *See supra* n.10.

on assault, the undersigned recommends that such claim be dismissed without prejudice and with leave to amend because there is no allegation that LaPorte assaulted plaintiff.

To the extent that plaintiff's amended complaint could be viewed as raising a First Amendment retaliation claim against LaPorte, Schalager, Cuppino, and Pezdek for their refusal to investigate his sexual assault complaint against Van Winkler and assign him a new parole officer, *see* Dkt. No. 4 at 10, "[i]t is well established that '[t]here is . . . no constitutional right to an investigation by government officials.'" *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014), *aff'd,* 614 F. App'x 32 (2d Cir. 2015) (first quoting *Stone v. Dept. of Investigation of City of New York,* No. 91-CV-2471 (MBM), 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992), then citing *Harrington v. Cnty. of Suffolk,* 607 F.3d 31, 35-36 (2d Cir.2010)); *Rasheen v. Adner*, 356 F. Supp. 3d 222, 236 (N.D.N.Y. 2019) (citing *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) ("[C]ourts within the Second Circuit have determined that '[t]here is . . . no constitutional right to an investigation by government officials.")); *Houston v. Schriro*, No. 11-CV-7374 (HB), 2013 WL 4457375, at *10 (S.D.N.Y. Aug. 20, 2013) (additional citation omitted) ("Ignoring grievances cannot support a First Amendment retaliation claim."). Accordingly, the undersigned concludes that plaintiff's First Amendment retaliation claim against LaPorte, Schalager, Cuppino, and Pezdek for their refusal to investigate his sexual assault complaint against Van Winkler be dismissed with prejudice and without leave to amend.

Similarly, the undersigned concludes that plaintiff's allegation that LaPorte, Schalager, Cuppino, and Pezdek refused to assign him a new parole officer, as written, does not establish the type of conduct that "deter a similarly situated individual of ordinary

firmness from exercising his or her constitutional rights." *Walker*, 130 F.4th at 298. Plaintiff does not provide any details of his purported sexual assault complaint against Van Winkler, the context in which he attempted to file his complaint, and does not attach a copy of the complaint he attempted to submit. *See generally* Dkt. No. 4. Accordingly, as it is possible that plaintiff could provide further information and details supporting this claim, the undersigned recommends that plaintiff's First Amendment retaliation claim against LaPorte, Schalager, Cuppino, and Pezdek for refusing to assign him a new parole officer be dismissed without prejudice and with leave to amend.

6. **Retaliatory and Malicious Prosecution**

As discussed above, plaintiff alleges that Force and Van Winkler retaliated against him by lying in the criminal complaints charging him with Third-Degree menacing and Second-Degree Harassment and violating his parole. *See supra* at 7-8; Dkt. No. 4 at 8, 10, 13, 15. Plaintiff's claims could be interpreted as raising either a First Amendment retaliation claim based on retaliatory prosecution or a Fourth Amendment malicious prosecution claim.

The elements a plaintiff must demonstrate to plead a First Amendment retaliation claim are listed above. *See supra* at 22-23; *see Walker*, 130 F.4th at 298 (quoting *Espinal*, 558 F.3d at 128 (quoting *Gill*, 389 F.3d at 380)). "Criminal charges qualify as some other concrete harm." *Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *11 (S.D.N.Y. Mar. 7, 2016), *on reconsideration in part,* No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) (citing *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (holding that the "issuance of the tickets was an injury in that it subjected [plaintiff]

to a state action requiring that she either appear in court, pay a fine, or both") (internal quotation marks omitted).

"To prevail on a Section 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law.'" *Kelly v. Guzy*, No. 8:20-CV-0721 (GTS/CFH), 2021 WL 5232749, at *4 (N.D.N.Y. Nov. 10, 2021), *report and recommendation adopted,* No. 8:20-CV-0721 (GTS/CFH), 2022 WL 160305 (N.D.N.Y. Jan. 18, 2022) (quoting *Butler v. Hesch*, 286 F. Supp. 3d 337, 355 (N.D.N.Y. Feb. 15, 2018) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010))).

"The elements of a malicious prosecution claim under § 1983 are substantially the same as the elements under New York law." *Kelly*, 2021 WL 5232749, at *4 (quoting *Hawthorne v. City of Albany*, No. 1:17-CV-0716 (GTS/TWD), 2017 WL 3822112, at *6 (N.D.N.Y. July 25, 2017), *report and recommendation adopted sub nom. Hawthorne v. Ruecker*, No. 1:17-CV-0716 (GTS/TWD), 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003))).

> To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate that there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).

*Kelly*, 2021 WL 5232749, at *4-5 (quoting *Hawthorne*, 2017 WL 3822112, at *6).

> Blacks's Law Dictionary defines "criminal proceeding" as "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides the offender's punishment; at a criminal hearing or trial." Black's Law Dictionary

(10th ed. 2014). Courts have recognized that entrance of a guilty plea is part of a criminal proceeding. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("A guilty plea . . . is an event of signal significance in a criminal proceeding.") (citations omitted); *Davila v. United States*, 07-CV-1320 (JBW), 2008 WL 906691, at *12 (E.D.N.Y. Mar. 31, 2008) (noting that the competency requirement "applies throughout all stages of the criminal proceedings, including the guilty plea").

*Kelly*, 2021 WL 5232749, at *5 (quoting *Cantey v. Martinez*, No. 1:16-CV-0014 (GTS/CFH), 2018 WL 2727868, at *6 (N.D.N.Y. June 6, 2018).

The Second Circuit has held that although "police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) ([additional] quotations omitted).  "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

*Kelly*, 2021 WL 5232749, at *5 (*Butler v. Hesch*, 286 F. Supp. 3d 337, 356 (N.D.N.Y. 2018).

However, regardless of whether plaintiff's complaint is analyzed as retaliatory prosecution or malicious prosecution, plaintiff's claims may be precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994).  "A civil lawsuit may not be used to collaterally attack an existing criminal conviction."  *Barzee v. Tyler*, No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *10 (N.D.N.Y. May 3, 2022), *report and recommendation adopted,* No. 8:21-CV-902 (GTS/CFH), 2022 WL 2079084 (N.D.N.Y. June 9, 2022) (citing *Heck*, 512 U.S. at 484-86).

In *Heck*, the Supreme Court of the United States held that a Section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate an extant criminal conviction unless "the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus."

*Id*. (quoting *Heck*, 512 U.S. at 486-87).  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 487; *see Hartwick v. Annucci*, No. 5:20-CV-408 (DNH), 2020 WL 6781562, at *6 (N.D.N.Y. Nov. 18, 2020) (noting that *Heck* extends to parole officers and parole violations).

Here, plaintiff has not provided the Court with any information regarding what happened to the criminal charges filed against him by Force and Van Winkler or any determination he received thereof.  *See generally* Dkt. No. 1.  Plaintiff does not state whether he was convicted of any crime as a result of the charges Force and Van Winkler filed against him.  *See id*.  As such, the undersigned cannot evaluate whether plaintiff's First Amendment retaliatory prosecution and malicious prosecution claims are precluded by *Heck*.  *See Stegemann v. Rensselaer Cty. Sheriff's Office*, 648 F. App'x 73, 76 (2d Cir. 2016) (summary order) ("Heck bars a § 1983 claim based on an extant conviction, but it has no application to an anticipated future conviction.").

Plaintiff's complaint raises claims that his First and Fourth Amendment rights were violated.  *See* Dkt. No. 1 at 8, 10, 13, 15.  If it is the case that plaintiff has been convicted of the parole violations, a finding in plaintiff's favor on these First and Fourth Amendment claims would "necessarily invalidate" a criminal conviction; thus, "plaintiff's claims are barred by *Heck* unless and until he can demonstrate favorable termination of his criminal conviction."  *Cole v. Smrtic*, 1:24-CV-00847 (MAD/CFH) 2024 WL 4870495, at *5 (N.D.N.Y. Nov. 21, 2024); *Cato v. Bleakley*, No. 20-CV-7087 (EAW), 2021 WL 4595427, at *4 (W.D.N.Y. Oct. 6, 2021) (quoting *Heck*, 512 U.S. at 490) ("[I]n order to recover damages under Section 1983 for harm 'attributable to an unconstitutional conviction or

sentencing[,]' the conviction or sentence must first be invalidated. Where the claim has not first been invalidated, the cause of action under Section 1983 is not cognizable because it has not yet accrued.").  It is not clear whether plaintiff has been convicted of the criminal charges, his complaint does not indicate any such favorable termination, and the NYDOCCS incarcerated lookup website provides that plaintiff is currently incarcerated.[20] [21]

Therefore, the undersigned recommends that plaintiff's First Amendment retaliatory prosecution/Fourth Amendment malicious prosecution claims against Force and Van Winkler be dismissed without prejudice and with leave to amend because it is possible that plaintiff can demonstrate that he received a favorable termination of the criminal charges Force and Van Winkler filed against him.

## 8. § 1983 Conspiracy

As stated above, plaintiff alleges that Van Winkler, Pedzek, Pelligrino, Schalager, Traglia, Force, Bektic, LaPorte, and Cuppino collectively acted to have his parole revoked in retaliation for raising a PREA complaint, filing or attempting to file a complaint against Van Winkler alleging sexual assault, attempting to file a grievance against Schalager and have Van Winkler removed as his parole officer, and filing the lawsuits in case numbers 9:23-CV-0821, 9:23-CV-0918, and 6:24-CV-1129.  *See supra* at 6-8; Dkt. No. 4 at 4-6, 8-10.  More specifically, plaintiff alleges that LaPorte, Schalager, Pedzek, and Cuppino

---

[20] NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, "Find an Offender Incarcerated Lookup," "Burrell, Ako." https://nysdoccslookup.doccs.ny.gov/ (last visited Jan. 23, 2026).
[21] "The Court obtained Plaintiff's transfer date from the inmate lookup service on the official website of the New York State Department of Corrections and Community Supervision ("DOCCS") using Plaintiff's Identification Number, [17B2994].  'Courts in this district have taken judicial notice of information obtained from online inmate tracking services.'"  *Jackson v. Sullivan Cnty.*, No. 16 CIV. 3673 (JCM), 2018 WL 1582506, at *5, n.8 (S.D.N.Y. Mar. 27, 2018) (quoting *Narvaez v. City of New York*, No. 16 Civ. 1980 (GBD), 2017 WL 1535386, at *5 n.6 (S.D.N.Y. Apr. 17, 2017) (quoting *Tavares v. New York City Health & Hosps. Corp.*, No. 13-CV-3148 (PKC/MHD), 2015 WL 158863, at *3 (S.D.N.Y. Jan. 13, 2015))).

intentionally assigned Van Winkler as his parole officer.  *See* Dkt. No. 4 at 10.  Plaintiff also alleges that LaPorte, Schalager, Pedzek, and Cuppino refused to investigate the sexual assault complaint he filed against Van Winkler.  *See id*.

"The elements of a claim for conspiracy pursuant to § 1983 are '(1) an agreement . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'"  *Hester v. Albany Cnty. Dist. Att'y*, No. 1:20-CV-1153 (LEK/CFH), 2021 WL 1968201, at *8 (N.D.N.Y. Apr. 22, 2021), *report and recommendation adopted sub nom. Hester v. Regan,* No. 1:20-CV-1153 (LEK/CFH), 2021 WL 1966743 (N.D.N.Y. May 17, 2021) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (additional citation omitted)).  "An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient."  *Id*. (quoting *McRae v. Fischer*, No. 9:17-CV-146 (BKS/CFH), 2018 WL 3432743, at *6 (N.D.N.Y. June 6, 2018), *report and recommendation adopted*, No. 9:17-CV-146 (BKS/CFH), 2018 WL 3432700 (N.D.N.Y. July 16, 2018)).  "Although exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.'"  *Id*.  (quoting *Anilao v. Spota*, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011)).  "To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant 'acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts.'"  *Id*. (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).  "Conclusory, vague, and general allegations are insufficient to support a conspiracy claim."  *Id*. (citing *Ciambriello*, 292 F.3d at 325).

"Where 'there is no underlying constitutional violation, there can be [no] § 1983 cause of action for conspiracy.'" *Rucano v. Annucci*, No. 9:18-CV-0218 (GTS/CFH), 2021 WL 3293504, at *24 (N.D.N.Y. May 19, 2021), *report and recommendation adopted sub nom. Rucano v. Venettozzi*, No. 9:18-CV-0218 (GTS/CFH), 2021 WL 3292394 (N.D.N.Y. Aug. 2, 2021) (quoting *Bibeau v. Soden*, No. 8:08-CV-0671 (LEK/RFT), 2009 WL 701918, at *8 (N.D.N.Y. Mar. 13, 2009); *see also Taylor v. New York Dep't of Corr. Servs.*, No. 9:10-CV-140 (MAD/RFT), 2012 WL 913678, at *9 (N.D.N.Y. Feb. 23, 2012), *report and recommendation adopted sub nom. Taylor v. New York Dep't of Corr.*, No. 9:10-CV-140 (MAD/RFT), 2012 WL 913564 (N.D.N.Y. Mar. 16, 2012) ("[T]he failure of a plaintiff to show an underlying constitutional violation on which to base a section 1983 conspiracy claim means the conspiracy claims fails as a matter of law.").

Here, plaintiff's conspiracy claim is a "conclusory, vague, and general allegation." *Hester*, 2021 WL 1968201, at *8.  Plaintiff conclusorily alleges concerted action between Van Winkler, Pedzek, Pelligrino, Schalager, Traglia, Force, Bektic, LaPorte, and Cuppino, and fails to set forth any facts demonstrating how these parties reached an agreement, understanding, or meeting of the minds that violated his rights. *See id*.  Plaintiff's amended complaint implies the existence of an agreement but fails to provide any details concerning the agreement, including the manner in which the agreement was reached, any respective obligations of the members of the alleged agreement, or any concerted action in furtherance of the agreement.[22]  *See generally* Dkt. No. 4; *see also Hester*, 2021 WL 1968201, at *8.  However, because it is possible that plaintiff may be able to amend

---

[22] The undersigned notes that although the alleged assault in the parole office could potentially be deemed concerted action, plaintiff does not connect defendants assaulting him to the parole violation.  Rather, plaintiff attaches the two criminal complaints filed on October 29, 2024, describing plaintiff's aggressive and threatening behavior immediately prior to the purported incident.  *See* Dkt. No. 4 at 13, 15.

to cure these defects, the undersigned recommends that plaintiff's § 1983 conspiracy claim be dismissed without prejudice and with leave to amend.  *See Hester*, 2021 WL 1968201, at *8

### IV.  Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017) (summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, all of plaintiff's claims against all defendants in their official capacities are barred by the Eleventh Amendment.  Plaintiff's Fifth Amendment due process and Sixth Amendment claims against all defendants cannot the cured by a better pleading.  Similarly, plaintiff's First Amendment retaliation claim against LaPorte, Schalager, Cuppino, and Pezdek for their refusal to investigate his sexual assault complaint against Van Winkler cannot be cured by a better pleading.  Moreover, the Court cannot grant the relief plaintiff seeks in his Fourteenth Amendment due process claim against LaPorte, Schalager, Cuppino, and Pezdek, in their individual capacities, for their refusal to investigate his sexual assault claim against Van Winkler and allow plaintiff to file a PREA complaint against Van Winkler based on the alleged sexual assault.  Alternatively, the defects in plaintiff's (1) Fourteenth Amendment equal protection based on selective

34

enforcement claim against Hochul and James; (2) Fourth Amendment excessive force claim against LaPorte and Schalager; (3) First Amendment retaliation claim LaPorte, Schalager, Cuppino, and Pezdek for refusing to assign him a new parole officer; (4) First Amendment retaliatory prosecution and Fourth Amendment malicious prosecution claims against Force and Van Winkler; and (5) Section 1983 conspiracy claim against Van Winkler, Pedzek, Pelligrino, Schalager, Traglia, Force, Bektic, LaPorte, and Cuppino can potentially be cured by a better pleading.

Accordingly, it is recommended that insofar as plaintiff seeks to proceed against all defendants in their official capacities for monetary damages, such claims be dismissed in their entirety without prejudice and without leave to amend.  It is also recommended that plaintiff's First Amendment retaliation claim against LaPorte, Schalager, Cuppino, and Pezdek for their refusal to investigate his sexual assault complaint against Van Winkler, and Fourteenth Amendment due process claim against LaPorte, Schalager, Cuppino, and Pezdek for their refusal to investigate his sexual assault claim against Van Winkler and allow plaintiff to file a PREA complaint against Van Winkler based on the alleged sexual assault, all in their individual capacities, be dismissed with prejudice and without leave to amend.  It is further recommended that plaintiff's (1) Fourteenth Amendment equal protection based on selective enforcement claim against Hochul and James; (2) Fourth Amendment excessive force claim against LaPorte and Schalager; (3) First Amendment retaliation claim against LaPorte, Schalager, Cuppino, and Pezdek for refusing to assign plaintiff a new parole officer; (4) First Amendment retaliation claim against LaPorte based on assault; (5) First Amendment retaliatory prosecution and Fourth Amendment malicious prosecution claims against Force and Van Winkler; and (6) Section 1983 conspiracy claim

against Van Winkler, Pedzek, Pelligrino, Schalager, Traglia, Force, Bektic, LaPorte, and Cuppino, all in their individual capacities, be dismissed without prejudice and with leave to amend.[23]   It is finally recommended that plaintiff's (1) Fourteenth Amendment due process claims against LaPorte, Cuppino, Schalager, Pezdek, and Van Winkler for refusing to assign him a new parole officer and keep him on GPS monitoring; (2) Fourth Amendment excessive force claims against Traglia, Pezdek, Bektic, Force, Van Winkler, and Pelligrino; and (3) First Amendment retaliation claim against Van Winkler, Pedzek, Schalager, Traglia, Force, Bektic, and Pelligrino for assault, all in their individual capacities, survive Section 1915 review.

## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**;

**ORDERED**, that the Clerk amend the caption to add as a defendant Cuppino; and it is

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against all defendants in their official capacities for monetary damages (Dkt. No. 4), such claims for relief be **DISMISSED without prejudice and without leave to amend**; it is further

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against LaPorte, Schalager, Cuppino, and Pezdek for their refusal to investigate his sexual assault claim

---

[23] In the event the District Judge adopts the undersigned's Report-Recommendation & Order and plaintiff is permitted to file an amended complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference and may not attempt to replead claims that have already been dismissed by this Court with prejudice.  Any amended pleading supersedes and replaces a prior pleading in its entirety. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for whom leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

against Van Winkler and allow plaintiff to file a PREA complaint against Van Winkler based on the alleged sexual assault, all in their individual capacities, for monetary damages alleging a violation of his Fourteenth Amendment due process rights (Dkt. No. 4), such claim for relief be **DISMISSED with prejudice and without leave to amend**; it is further

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against LaPorte, Schalager, Cuppino, and Pezdek, all in their individual capacities, alleging First Amendment retaliation based on a refusal to investigate his sexual assault claim against Van Winkler (Dkt. No. 4), such claim for relief be **DISMISSED with prejudice and without leave to amend**; it is further

**RECOMMENDED**, that plaintiff's claims for (1) Fourteenth Amendment equal protection based on selective enforcement claim against Hochul and James; (2) Fourth Amendment excessive force claim against LaPorte and Schalager; (3) First Amendment retaliation against LaPorte, Schalager, Cuppino, and Pezdek for refusing to assign plaintiff a new parole officer; (4) First Amendment retaliation against LaPorte based on assault; (5) First Amendment retaliatory prosecution and Fourth Amendment malicious prosecution against Force and Van Winkler; and (6) Section 1983 conspiracy against Van Winkler, Pedzek, Pelligrino, Schalager, Traglia, Force, Bektic, LaPorte, and Cuppino, all in their individual capacities, (Dkt. No. 4), be **DISMISSED without prejudice and with leave to amend**; it is further

**RECOMMENDED**, that plaintiff's claims for (1) Fourteenth Amendment due process against LaPorte, Cuppino, Schalager, Pezdek, and Van Winkler for refusing to assign him a new parole officer and keep him on GPS monitoring; (2) Fourth Amendment excessive force against Traglia, Pezdek, Bektic, Force, Van Winkler, and Pelligrino; and

(3) First Amendment retaliation against Van Winkler, Pedzek, Pelligrino, Traglia, Force, and Bektic for assault in retaliation for his protected speech, all in their individual capacities, survive Section 1915 review; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order and plaintiff is permitted to amend his complaint, upon filing of the amended complaint – or upon the expiration of plaintiff's time to do so – the Clerk shall return the case to the Magistrate Judge for further review; and if plaintiff does not file an amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the original complaint for any claims that were permitted to proceed in the original complaint, with all other claims deemed stricken; and it is further

**RECOMMENDED**, that this matter be deemed related to case number 6:24-CV-1169 (DNH/MJK), Burrell v. Van Winkler, et al.; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14)**

**DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[24]

        Dated:  January 28, 2026
                Albany, New York


                                        _____
                                        Paul J. Evangelista
                                        U.S. Magistrate Judge

---

[24] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).